PEOPLE v. GOLDBERG.

(Supreme Court, Appellate Division, Second Department. July 27, 1911.)

1. ARSON (§ 37*)—EVIDENCE—SUFFICIENCY.
    In a prosecution for arson in the second degree, evidence *held* insufficient to support a conviction.
    [Ed. Note.—For other cases, see Arson, Cent. Dig. §§ 71–73; Dec. Dig. § 37.*]

2. ARSON (§ 31*)—EVIDENCE—ADMISSIBILITY.
    Where defendant was accused of the crime of arson in setting fire to a building owned by his brother-in-law, evidence of insurance policies on the building was improperly received, where there was no evidence to show that defendant had any interest in the insurance policies, or that he was attempting to burn the premises so that his brother-in-law might collect the insurance.
    [Ed. Note.—For other cases, see Arson, Cent. Dig. §§ 65–68; Dec. Dig. § 31.*]

3. CRIMINAL LAW (§ 1172*)—APPEAL—HARMLESS ERROR—INSTRUCTIONS.
    In a prosecution for arson, where evidence of insurance policies had been improperly admitted, it was prejudicial error for the trial court to call the attention of the jury to them by declaring that there was no evidence of overinsurance and instructing them, "And yet there are the facts for you to take into consideration."
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3154–3169; Dec. Dig. § 1172.*]

    Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Max Goldberg was convicted of arson, and appeals. Reversed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Hugo Hirsh (Ferd. W. Buermeyer, on the brief), for appellant.

Peter P. Smith (John F. Clarke, Dist. Atty., on the brief), for the People.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODWARD, J. The defendant was indicted for the crime of arson in the second degree, in that he did, on June 20, 1909, willfully set fire and burn the premises 185 Washington street, Brooklyn, a dwelling house, in the nighttime; there being no human being therein at the time. Upon the first trial of the indictment the jury disagreed. The second trial resulted in the judgment now before us for review, and the defendant has been sentenced to a term in Sing Sing prison. The defendant appeals.

[1] The evidence on which this conviction was secured is to the effect that at about 9 o'clock of the evening of June 20, 1909, a police officer, one Quealy, was standing about 100 feet from the premises in question when he heard a sound of breaking glass; that this officer ran to the premises and found the defendant coming out of the front door; that he asked the defendant what was the matter, and the defendant replied there must have been an explosion; that he asked defendant where he was going, and the latter replied that he was going to tell his brother-in-law, who owned the store, and the witness told defendant to go ahead; that he (the officer) stood in front of the premises for four or five minutes, and then smelled gasoline or oil; that he went into the building and found his way into a rear kitchen, where he found fire in three different places; that he ran out and turned in an alarm, and the fire department came and put out the fire; that the fire marshal visited the premises between 10 and 11 o'clock the next morning and found an old pail, with the odor of gasoline about it, and found some books and pamphlets reeking with gasoline, with traces of gasoline on the arm of a chair. The defendant was arrested about 2 o'clock in the morning following the fire, and explained that he visited the premises, occupied by his brother-in-law, for the purpose of getting some clothes which he had left there when he moved out some months before; that he found no one in and lighted a match for the purpose of going to a closet for the clothes, when an explosion occurred, and he ran out and was met by the officer, as stated. Upon the trial he testified to the same story, was corroborated by his brother-in-law, and the latter testified that he was a dealer in secondhand watches, revolvers, etc., that he had been for a period of 15 years, that he always kept benzine upon the premises in the pail which was found there after the fire, for the purpose of cleaning the rust and dirt from the secondhand articles which he purchased and repaired; and it was in evidence that benzine thus kept would generate a gas in a closed room which would explode upon coming in contact with a flame, and that such an explosion would scatter the fire in different parts of the room, so that there was undisputed evidence of a condition which would fully account for the fire, in entire harmony with the story originally told by the defendant, and which had in it no possible element of crime. It was also in evidence that the defendant had clothes at the premises, and that they were in fact delivered to him after the fire. We think the evidence was not sufficient to warrant the conviction.

[2, 3] On the trial, over the objection and exception of the defendant, evidence was received as to various policies of insurance upon

the premises, and the learned trial court, charging the jury, declared that there was no evidence of overinsurance; "yet there are the facts for you to take into consideration. It is proper for you to consider motive or absence of motive, in passing on a man's guilt in a case of this kind." It was conceded that the property belonged to Mr. Mirell, a brother-in-law of the defendant; but there was absolutely no evidence which could possibly connect the defendant with the insurance, or with any interest in it, or with any knowledge that there was any insurance; nor was there any evidence from which an inference could be drawn that the defendant was attempting to burn the premises that his brother-in-law might collect the insurance. Indeed, there is no evidence from which it might be inferred that the brother-in-law would be benefited by the fire in any degree. The jury was charged that there was no evidence of overinsurance, and it is difficult to conceive of any possible bearing which the fact of insurance could have upon the defendant's guilt of the crime charged. We think it was prejudicial error, under the circumstances of this case, to have the evidence of insurance before the jury, or to call their attention to it in the charge, as was done.

The judgment appealed from should be reversed. All concur, except RICH, J., dissenting.